```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____3/20/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BERKLEY ASSURANCE COMPANY,

                Plaintiff,

         -against-

JOHN H. FISHER, P.C. and JOHN H. FISHER,

                Defendants.

---

1:23-cv-1716 (MKV)

**OPINION & ORDER
DENYING DEFENDANTS'
MOTION TO AMEND
AND
GRANTING PLAINTIFF'S
MOTION FOR
SUMMARY JUDGMENT**

**MARY KAY VYSKOCIL, United States District Judge:**

    Plaintiff Berkley Assurance Company ("BAC") filed this action against Defendants John H. Fisher, P.C. and John H. Fisher seeking a declaration that BAC has no duty to defend or to indemnify Defendants in a legal malpractice action [ECF No. 1]. Defendants filed an answer and counterclaims [ECF No. 10]. Now before the Court are Defendants' untimely motion to amend their answer [ECF No. 31] and Plaintiff's motion for summary judgment on all its claims and Defendants' counterclaims [ECF No. 41]. For the reasons set forth below, Defendants' motion to amend is DENIED, and Plaintiff's motion for summary judgment is GRANTED.

## I.    BACKGROUND[1]

### A. Facts

    The facts are undisputed. Defendants John H. Fisher, P.C. and John H. Fisher were retained by a client on December 21, 2018. *See* Pl. 56.1 ¶ 2; Def. Counter 56.1 ¶ 2; Attorney-Client Fee Agreement at 1. The client's son had been born on February 24, 2017 with multiple disabilities.

---

[1] The facts are taken from the evidence cited in the parties' Local Civil Rule 56.1 Statements, including the affidavits and declarations submitted in connection with the motion for summary judgment and the exhibits attached thereto [ECF Nos. 42 ("Pl. 56.1"), 43 ("Bernstein Aff."), 43-1 ("Attorney-Client Fee Agreement"), 43-2 ("Weininger Letter"), 43-5 ("Policy"), 43-4 ("BAC July Letter"), 43-6 ("BAC Sept. Letter"), 47 ("Coughlin Decl."), 47-1 ("Legal Mal. Cmpl."), 47-2 ("Med. Mal. Cmpl."), 49, 55 ("Def. Counter 56.1"), 56, 57, 59 ("Pl. Counter 56.1"), 61 ("BAC File")]. The facts are undisputed unless otherwise indicated.

Pl. 56.1 ¶ 1; Def. Counter 56.1 ¶ 1.  On February 15, 2019, Defendants filed a medical malpractice action on behalf of the client against several defendants (a hospital, two doctors, and a medical practice), alleging that they had negligently failed to provide the client with adequate prenatal care. *See* Pl. 56.1 ¶ 3; Def. Counter 56.1 ¶ 3; Med. Mal. Cmpl. ¶¶ 3, 4, 11, 18, 26.  However, the complaint in the medical malpractice action did not name as a defendant, or assert any claims against, Cornerstone Family Health Center ("Cornerstone"), a facility where the client had received certain prenatal care.  Pl. 56.1 ¶ 4; Def. Counter 56.1 ¶ 4.  The medical malpractice action was dismissed in its entirety on a motion for summary judgment.   Pl. 56.1 ¶ 7; Def. Counter 56.1 ¶ 7; Coughlin Decl., Ex. F.

Thereafter, on July 8, 2022, Defendants received a letter from William P. Weininger, the client's new counsel, dated July 6, 2022.  Pl. 56.1 ¶ 8; Def. Counter 56.1 ¶ 8; *see* Weininger Letter. The Weininger Letter stated that new counsel had been retained "to investigate a legal malpractice claim arising out of [Defendants'] handling of [the client's] medical malpractice case."  Weininger Letter; Pl. 56.1 ¶ 9; Def. Counter 56.1 ¶ 9.  The client later filed a legal malpractice action against Defendants on August 5, 2022.  *See* Legal Mal. Cmpl. (the "Legal Malpractice Action"); Pl. 56.1 ¶ 14; Def. Counter 56.1 ¶ 14.  The complaint in the Legal Malpractice Action alleges that the client had received negligent prenatal care at Cornerstone, had retained Defendants "to investigate and pursue" any viable claims against all potential parties for "negligent prenatal care," and Defendants had "negligently failed to timely file a . . . claim [against Cornerstone] within the statutorily mandated time frame."  Legal Mal. Cmpl. at 2–5; *see* Pl. 56.1 ¶¶ 16, 17; Def. Counter 56.1 ¶¶ 16, 17; *see* Coughlin Decl., Ex. H ¶ 16.

Meanwhile, Plaintiff Berkley Assurance Company ("BAC") issued an insurance policy to John H. Fisher, P.C. for the policy period July 10, 2022 to July 10, 2023.  Policy at 2, 7; Pl. 56.1 ¶ 21; Def. Counter 56.1 ¶ 21.  The Policy contains a retroactive date of July 10, 2020.  Policy at 7;

Pl. 56.1 ¶ 22; Def. Counter 56.1 ¶ 22.  The Policy applies only to claims for damages that "arise out of 'legal services' that took place subsequent to the Policy effective date or Retroactive Date." Policy § I.1.b; *see* Pl. 56.1 ¶ 25; Def. Counter 56.1 ¶ 25.  The Policy also contains a "Known-Claims Exclusion," Pl. 56.1 ¶ 26; Def. Counter 56.1 ¶ 26, which excludes from coverage any claim arising from legal services "rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen" that such prior legal services "could give rise" to a claim. Policy § I.2.a; *see* Pl. 56.1 ¶ 26; Def. Counter 56.1 ¶ 26.

On July 15, 2022, before the Legal Malpractice Action had been filed, BAC received notice of the Weininger Letter, via email from Defendants' insurance broker, and responded by reserving all rights under the Policy until a claim was made against Defendants.  Pl. 56.1 ¶¶ 12, 13; Def. Counter 56.1 ¶¶ 12, 13; *see* BAC July Letter.  BAC made a note in its file that the "Policy [was] just renewed on 7/10," and the Weininger Letter was "dated 7/6," which facts raised the question: "Insured have any prior knowledge of incident which may result in a claim?"  BAC File at 21; Def. Counter 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.  Shortly thereafter, John Fisher informed BAC of his belief that the statute of limitations on any claim against Cornerstone had already expired in 2018 before he "got the records and met with the client."  BAC File at 17; Def. Counter 56.1 ¶¶ 38, 39; Pl. Counter 56.1 ¶¶ 38, 39.

After the Legal Malpractice Action was filed against Defendants, by letter dated September 19, 2022, BAC agreed to provide a defense subject to a reservation of rights.  Pl. 56.1 ¶ 28; Def. Counter 56.1 ¶ 28; *see* BAC Sept. Letter.  BAC specifically reserved its right to disclaim coverage and withdraw from the defense based on a determination either that the Known-Claims Exclusion applied or that the legal services at issue took place prior to the Policy's Retroactive Date.  Pl. 56.1 ¶ 29; Def. Counter 56.1 ¶ 29; *see* BAC Sept. Letter at 7–8.  BAC continues to provide a defense

to Defendants in the Legal Malpractice Action, subject to a reservation of rights, pending the resolution of this action.  Pl. 56.1 ¶ 30; Def. Counter 56.1 ¶ 30; Bernstein Aff. ¶ 5.

Defendants contend that BAC has prioritized its coverage dispute with Defendants over providing them with a defense in the Legal Malpractice Action.  Defendants generally assert that the defense counsel BAC selected for them in the Legal Malpractice Action "was reporting directly to BAC," instead of to Defendants [ECF No. 54 ("Opp. to MSJ") at 8 (citing BAC File at 1–14)].  Defendants offer evidence that BAC "never informed" Defendants that they "would be entitled to independent counsel in the Legal Malpractice Action at BAC's expense."  Fisher Aff. ¶ 12.  In addition, Defendants "have had only two telephone conversations" with the defense counsel that BAC selected.  Fisher Aff. ¶ 14.  Defendants also assert that the Legal Malpractice Action was filed after the statute of limitations for that case expired, but the defense counsel retained by BAC has "never sought to dismiss" on that basis.  Fisher Aff. ¶ 11.

**B.  Procedural History**

BAC filed this declaratory judgment action against Defendants seeking solely declaratory relief [ECF No. 1 ("Cmpl.")].  The Complaint asserts (1) a claim for a declaratory judgment that BAC has no duty to defend Defendants in the Legal Malpractice Action, and (2) a claim for a declaratory judgment that BAC has no duty to indemnify Defendants.  Cmpl. ¶¶ 33–40.

Defendants filed an answer asserting several affirmative defenses and four counterclaims [ECF No. 10 ("Ans.")].  In particular, as relevant here, Defendants assert as an affirmative defense that "plaintiff's inequitable conduct constitutes unclean hands and therefore bars the granting of relief to plaintiff."  Ans. ¶ 7.  Defendants also purport to assert an affirmative defense "under the doctrine of laches."  Ans. ¶ 9.  As for their counterclaims, Defendants purport to assert: (1) a claim that "[t]he court should order the plaintiff to defend and indemnify the defendants" in the Legal Malpractice Action, Ans. ¶ 13; (2) a claim for attorneys' fees in this action, Ans. ¶ 15; (3) a claim

for "intentional infliction of emotional harm upon . . . John H. Fisher," Ans. ¶ 17; and (4) a claim for punitive damages, Ans. ¶ 19.

After Defendants filed their Answer, and BAC responded to the counterclaims [ECF No. 17], the Court issued a Civil Case Management Plan and Scheduling Order in this case [ECF No. 18 (the "Scheduling Order")]. The Scheduling Order, dated July 26, 2023, expressly provides that "[a]ny motion to amend" a pleading "shall be filed within 30 days from the date of this Order." Scheduling Order ¶ 3. The Scheduling Order also expressly warns the parties: "**This ORDER may not be modified or the dates herein extended, except by further Order of this Court for good cause shown**." Scheduling Order at 4 (emphasis in original).

Neither side filed a motion to amend its pleading within 30 days. Months later, in October 2023, the parties jointly requested an extension of time to complete the discovery, citing delays in the underlying Legal Malpractice Action [ECF No. 21]. The Court granted in part and denied in part the parties' request [ECF No. 22 ("October 20223 Order")]. The Court admonished the parties that their "requested extensions [were] excessive" and that "[b]oth parties must be prepared to expeditiously prosecute the case pending in this forum." October 20223 Order at 3. The Court directed the parties to complete fact discovery by February 2, 2024, *id.*, and scheduled a post-discovery conference for later that month [ECF No. 25].

Pursuant to the Scheduling Order in this case and the Court's Individual Rules of Practice in Civil Cases, the parties were required to file a joint status letter and any request for leave to file a motion for summary judgment one week before the post-discovery conference. BAC filed a status letter and a request for leave to move for summary judgment in compliance with the Court's Rules and Scheduling Order [ECF Nos. 26, 27]. Defendants, however, filed only a letter seeking to briefly adjourn the post-discovery conference on the ground that they had just hired new counsel who needed time to prepare for the conference [ECF No. 29]. The Court adjourned the conference

*sine die*, in light of the request of BAC for leave to move for summary judgment, and set a briefing schedule for the motion [ECF No. 30].

Thereafter, on March 6, 2024, more than six months after the deadline to file a motion to amend a pleading and more than one month after the extended deadline to complete fact discovery, Defendants filed a motion to amend their answer [ECF Nos. 32, 32-1 ("Proposed Ans."), 33 ("Def. Mem.")].  Defendants do not contend that their motion to amend their answer reflects any new information they learned during discovery.  Rather, Defendants hired new counsel who suggested "minor alterations" to add detail to Defendants' affirmative defense of unclean hands and counterclaim for attorneys' fees.  Def. Mem. at 1.  BAC filed a memorandum of law in opposition to Defendants' motion to amend on the ground that the motion is untimely and the proposed amendments are futile [ECF No. 48 ("Pl. Opp.")].  Defendants filed a reply in further support of their motion [ECF No. 52].

Meanwhile, shortly after Defendants filed their motion to amend, BAC filed a motion for summary judgment in accordance with the Court's Order scheduling briefing of that motion [ECF Nos. 41, 42, 43, 45 ("MSJ"), 47].  BAC seeks summary judgment on its claims for declaratory judgment that it has no duty to defend or indemnify Defendants in the Legal Malpractice Action. *See* MSJ at 1.  BAC maintains that there is no dispute that the legal services giving rise to the Legal Malpractice Action occurred before the Policy's retroactive date, there is also no dispute that the Known-Claims Exclusion bars coverage, and, as such, BAC is entitled to judgment as a matter of law that it has no duty to defend or indemnify Defendants in the Legal Malpractice Action. *See id.* at 2–3, 11–17.  BAC also seeks summary judgment dismissing Defendants' counterclaims for substantially the same reasons.

Defendants filed an opposition to the motion for summary judgment [ECF No. 54 ("Opp. to MSJ")].  Defendants "agree[] that the 'Legal Services' alleged in the Legal Malpractice Action

took place prior" to the Policy's retroactive date. Opp. to MSJ at 11. However, Defendants argue that BAC is nevertheless "estopped from denying coverage" on the ground that BAC engaged in inequitable conduct. *Id.* Defendants further assert that there is a question of fact whether the Known-Claims Exclusion bars coverage. *See id.* at 11–13. Defendants devote most of their brief to arguments that BAC has breached duties to defendants, including by failing to provide a robust defense in the Legal Malpractice Action, and, for that reason, BAC is not entitled to summary judgment on its own claims or Defendants' counterclaims. *See id.* at 13–22.

BAC filed a reply brief in further support of its motion for summary judgment [ECF Nos. 58 ("MSJ Reply"), 59]. Thus, both Defendants' motion to amend and the motion of BAC for summary judgment are fully briefed.

## II.    LEGAL STANDARDS

### A. Amendment

Under Rule 15(a) of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). However, a district court has discretion to deny leave to amend for a "good reason," including futility, undue delay, and prejudice to the opposing party. *McCarthy*, 482 F.3d at 200; *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 510 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 498 (2d Cir. 2019). "Where a scheduling order has been entered," however, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 16(b)). Furthermore, the required "finding of good cause depends on the diligence of the moving party." *Id.*

### B. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). However, a party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). It is not enough to raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Nor is a "mere . . . scintilla of evidence in support of the [non-moving party's] position" sufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, the party opposing summary judgment must provide "hard evidence" of an issue for trial. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## III.    ANALYSIS

### A. Defendants Fail To Show Good Cause for their Untimely Motion To Amend.

Defendants seek leave to change two substantive paragraphs of their Answer. *See* Def. Mem. at 1; Proposed Ans. ¶¶ 7, 15. First, as noted above, Defendants assert as an affirmative defense in their Answer that "plaintiff's inequitable conduct constitutes unclean hands and therefore bars the granting of relief to plaintiff." Ans. ¶ 7. Defendants seek to add that such alleged "inequitable conduct" includes, but is not limited to, "plaintiff's failure to advise defendants that they were entitled to independent counsel" in the Legal Malpractice Action. Proposed Ans. ¶ 7.

Second, as indicated above, Defendants assert as their second counterclaim that they "are entitled to have their attorneys' fees paid by plaintiff with respect to the cost of defending this action . . . ." Ans. ¶ 15. The Answer currently asserts that Defendants' claim for attorneys' fees is

made "in view of the bad faith and improper conduct engaged in by the plaintiff."  Ans. ¶ 15.

Defendants seek to add that such conduct includes, but is not limited to "plaintiff's failure to offer

defendants effective counsel, plaintiff's failure to assert defenses in the underlying litigation that

would be beneficial to defendants, plaintiff's failure to take into account the interests of defendants,

and plaintiff's failure to give defendants' positions and arguments as much weight, if not more,

than its own."  Proposed Ans. ¶ 15.

Defendants' motion to amend, however, is untimely in the extreme.  The Court long ago

issued a Scheduling Order that established a deadline of August 25, 2023 for Defendants to file a

motion to amend their Answer.  *See* Scheduling Order ¶ 3.  Yet Defendants waited until March 6,

2024 to file their motion amend [ECF No. 32].  In other words, Defendants waited more than six

months after the Court-ordered deadline to seek leave to amend their Answer.

Further, Defendants have not made the required showing of good cause to file an untimely

motion to amend.  *See Grochowski*, 318 F.3d at 86; Fed. R. Civ. P. 16(b).  In its Scheduling Order,

the Court expressly warned, in bold typeface, that it would not extend deadlines without a showing

of good cause.  *See id*. at 4.  As the Second Circuit has explained, a "finding of good cause" in this

context requires a showing of "diligence" by the moving party.  *Grochowski*, 318 F.3d at 86.  Here,

Defendants have not shown diligence in seeking leave to amend their Answer.  Rather, "when the

motion was filed, discovery had been completed," and the Court had already set a briefing schedule

for "a summary judgment motion."  *Grochowski*, 318 F.3d at 86.

Defendants only explanation for the timing of their motion is that, approximately one year

into the litigation, Defendants hired new counsel.  *See* Def. Mem. at 2.  Defendants represent that,

"[u]pon reviewing the case," their new counsel sought "to make minor alterations to *expand* the

third affirmative defense and *specify* the nature of the second counterclaim."  *Id.* (emphases added).

Thus, Defendants concede that their proposed amendments are not based on any new information

they, or their new counsel, learned after the original Answer was filed.

It is well-established in this Circuit that "leave to amend may be denied where the moving party kn[ew] or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading." *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (quoting *Priestley v. American Airlines, Inc.*, 1991 WL 64459, at *1 (S.D.N.Y. Apr. 12, 1991)).  A different "strategic decision" by "newly substituted [defense] counsel" simply "is not a sufficient basis for leave to amend where plaintiff is prejudiced by the amendment." *Id.* Indeed, the Second Circuit has upheld the denial of a motion for leave to amend a pleading where, unlike here, the moving party's new counsel had discovered new information on the ground that amendment would have been "especially prejudicial given the fact that discovery had already been completed and [the party opposing amendment] had already filed a motion for summary judgment." *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985).  In light of this precedent, the Court is well within its discretion to deny Defendants' untimely request to "expand" upon and "specify" aspects of its pleading at this late stage of the litigation.  Def. Mem. at 2; *see Ansam Assocs.*, 760 F.2d at 446; *Zubulake*, 231 F.R.D. at 162.

Defendants contend that "Plaintiff will suffer no prejudice" if Defendants are permitted to amend their Answer, but Defendants' own brief belies that specious contention.  Def. Mem. at 3. The Second Circuit has explained that it is "particularly likely to find prejudice where," as here, "the parties have already completed discovery and [a party] has moved for summary judgment." *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) (citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).  In their brief, Defendants assert that their proposed amendments "should not require much, if any, discovery."  Def. Mem. at 3. "Defendants' attempt to trivialize the amount of additional discovery" does not help their cause, however. *Zubulake*, 231 F.R.D. at 162.  Defendants expressly seek to hold open the possibility of

reopening discovery, which would be prejudicial, notwithstanding Defendants' assertion that they will not seek "much" discovery.  Def. Mem. at 3; *see Werking*, 526 F. App'x at 96; *Ansam Assocs.*, 760 F.2d at 446.

Furthermore, Defendants assert in their brief that "there has yet been no filing of a motion for summary judgment," but that assertion is strikingly disingenuous.  Def. Mem. at 3.  The Court had already set a briefing schedule for summary judgment when Defendants filed their motion to amend (and, with it, their brief asserting that this case had not yet reached the summary judgment stage) [ECF No. 30].  BAC opposes Defendants' motion to amend on the ground that it would "undoubtedly delaying the ultimate disposition" of this case and prejudice BAC.  Pl. Opp. at 12. The Court does "find prejudice" here, since "the parties have already completed discovery and [BAC] has moved for summary judgment."  *Werking*, 526 F. App'x at 96.

Finally, even under the lenient standard of Rule 15(a), a district court has discretion to deny a motion for leave to amend a pleading where the moving party "fails to specify" how the proposed amendment "would cure" any "pleading deficiencies."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).  In support of their request to amend, Defendants repeatedly stress that "the proposed Amended Answer only contains slight changes that only detail and specify the affirmative defense and counterclaims alleged in the original Answer."  Def. Mem. at 4; *see id.* at 1–2, 5–6.  A mere lack of detail in a pleading generally is not a deficiency that needs to be cured. *See* Fed. R. Civ. P. 8 (requiring a "short and plain statement").[2]  In stressing how little they seek to depart from the original Answer, Defendants fail to identify any specific "deficiencies" in that

[2] Here, as described above, Defendants' proposed amendments merely add: one example of alleged "inequitable conduct" by BAC ("failure to advise defendants that they were entitled to independent counsel") for purposes of Defendants' "unclean hands" defense, Ans. ¶ 7; Proposed Ans. ¶ 7; and several examples of alleged "bad faith and improper conduct" by BAC in the Legal Malpractice Action (*e.g.*, alleged failures to "offer defendants effective counsel," assert defenses, and give "defendants' positions and arguments as much weight, if not more, than its own") that supposedly support Defendants' claim for attorneys' fees in this action,  Ans. ¶ 15; Proposed Ans. ¶ 15.

pleading and fail to explain how the proposed amendments are necessary to cure those deficiencies. *TechnoMarine SA*, 758 F.3d at 505. For this reason, and all of the reasons stated above, the Court denies Defendants' untimely request for leave to amend their Answer.

### B. BAC Has No Duty To Defend or Indemnify Defendants.

Under New York law, it is fundamental that the duty to defend is broader than the duty to indemnify. *See Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 476 N.E.2d 272 (1984); *Automobile Insurance Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152, 1155 (2006) (the "duty to defend is exceedingly broad") (internal quotation marks omitted). An insurer's duty to defend its insured arises when the allegations in a complaint against the insured state a claim that arguably could fall within the scope of the insurance policy. *Fieldston Prop. Owners Association, Inc. v. Hermitage Insurance Co.*, 16 N.Y.3d 257, 264, 920 N.Y.S.2d 763, 945 N.E.2d 1013 (2011); *see generally* Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 5.02[b][1] (20th ed. 2021). The duty to indemnify applies only to claims that actually are covered. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005); *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 178, 667 N.Y.S.2d 982, 690 N.E.2d 866, 870 (1997). Although broad, "an insurer's duty to defend is limited absolutely by the scope of the coverage purchased." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *see Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 574 N.E.2d 1035 (1991).

BAC has demonstrated that there is no dispute as to any material fact and BAC is entitled to judgment as a matter of law on its claims for declaratory judgment that BAC has no duty to defend or to indemnify Defendants in the Legal Malpractice Action. As Defendants admit, there is no dispute that the legal services giving rise to the Legal Malpractice Action occurred before the Policy's Retroactive Date, and, therefore, the Policy does not provide coverage for the Legal

Malpractice Action.  Moreover, on the record before the Court, there is no genuine dispute that the Known-Claims Exclusion precludes coverage.  Defendants argue that, while the Policy admittedly does not provide coverage, BAC is nevertheless "estopped from denying coverage" based on its "handling" of the coverage claim.  Opp. to MSJ at 16.  However, Defendants offer no evidence to raise a genuine dispute that BAC did anything improper.  Indeed, BAC followed the judicially sanctioned course of defending its insured subject to a reservation of rights and seeking a judicial declaration of the respective rights and obligations of the parties.  *See* Ostrager & Newman § 202 (collecting cases); *see also Com. Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 274 (2d Cir. 1987).

### A. There Is No Dispute that the Legal Services Giving Rise to the Legal Malpractice Action Occurred before the Policy Retroactive Date, and, thus, the Policy Precludes Coverage.

There is no dispute that the Policy applies only to claims for damages that "arise out of 'legal services' that took place subsequent to the Policy effective date or Retroactive Date."  Policy § I.1.b; *see* Pl. 56.1 ¶ 25; Def. Counter 56.1 ¶ 25.  Crucially, as Defendants expressly admit, there is also no dispute that the legal services giving rise to the Legal Malpractice Action occurred before the Policy's retroactive date.  *See* MSJ at 2, 6–9, 11–15; Opp. to MSJ at 11 (Defendants "agree[] that the 'Legal Services' alleged in the Legal Malpractice Action took place prior" to the Policy's retroactive date).  As such, the parties agree that the Policy does not provide coverage for the Legal Malpractice Action.  Opp. to MSJ at 11 ("the "Legal Services" took place prior to the Retroactive Date and, therefore the BAC Policy precludes coverage").

Specifically, the Policy's retroactive date is July 10, 2020.  Policy at 7; Pl. 56.1 ¶ 22; Def. Counter 56.1 ¶ 22.  The Legal Malpractice Action alleges that Defendants negligently failed to file a claim against Cornerstone, in connection with the underlying medical malpractice action, before the expiration of the statute of limitations for such a claim.  *See* Legal Mal. Cmpl. at 2–5; *see* Pl.

56.1 ¶¶ 16, 17; Def. Counter 56.1 ¶¶ 16, 17.  BAC and Defendants agree that the statute of limitations for any claim against Cornerstone expired well before July 10, 2020.  *See* Fisher Aff. ¶ 6 (attesting to Defendants' belief that the statute of limitations expired in October 2018, two years after the last prenatal service Cornerstone performed); MSJ at 13 (arguing that the latest date on which the statute of limitations could have expired was in February 2019, two years after the birth of the client's son).  Moreover, there is no dispute that Defendants filed a medical malpractice action that omitted any claim against Cornerstone in February 2019, which was more than a year before the Policy's retroactive date of July 10, 2020.  *See* Pl. 56.1 ¶¶ 3, 4; Def. Counter 56.1 ¶¶ 3, 4.  In all events, as noted above, Defendants expressly "agree[] that the 'Legal Services' alleged in the Legal Malpractice Action took place prior" to the Policy's retroactive date of July 10, 2020.  Opp. to MSJ at 11.

As the First Department has explained, "[t]he purpose of" a "policy's 'retroactive date'" is "to provide coverage to claims made . . . based on events that took place after a particular date." *American Int'l Specialty Lines Ins. Co. v. Kagor Realty Co. LLC*, 125 A.D.3d 572, 573, 5 N.Y.S.3d 32 (2015).  Put another way, a policy does not provide coverage for claims made based on events that took place *before* the retroactive date.  *See id.*  As set forth above, there is no dispute that the Legal Malpractice Action asserts claims based legal services that took place "prior" to the Policy's Retroactive Date.  Opp. to MSJ at 11.  Furthermore, Defendants expressly concede that, as such, the "Policy precludes coverage."  *Id.*

Thus, the parties agree that the claims in the Legal Malpractice Action do not arguably fall within the scope of the Policy.  *See Fieldston Prop. Owners Association, Inc.*, 16 N.Y.3d at 264; 920 N.Y.S.2d at 945.  It is blackletter law that the duty of BAC to provide a defense "is limited absolutely by the scope of the coverage purchased" by Defendants.  *Int'l Bus. Machs. Corp.*, 363 F.3d at 144; *see Zuk*, 78 N.Y.2d at 45, 571 N.Y.S.2d at 574.  Accordingly, there is no dispute of

material fact, and BAC is entitled to judgment as a matter of law on its claims for declaratory judgment that BAC has no duty to duty or indemnify Defendants in the Legal Malpractice Action. *See Kagor Realty Co. LLC*, 125 A.D.3d at 573.

Defendants respond only that summary judgment "should be denied on this issue because BAC breached its duties owed to Fisher" and "is now estopped from denying coverage." Opp. to MSJ at 11. In arguing that BAC breached a duty, Defendants specifically invoke only the "implied covenant of good faith and fair dealing." Opp. to MSJ at 15. They quote the Second Department stating that, "[i]n the context of an insurance-related dispute, the implied covenant of good faith and fair dealing means that the insurer must investigate claims for coverage in good faith . . . and must not act with 'gross disregard' of the insured's interests." *Id.* (*quoting E. Ramapo Cent. Sch. Dist. v. New York Sch. Ins. Reciprocal*, 199 A.D.3d 881, 158 N.Y.S.3d 173, 178 (2nd Dep't 2021)). Defendants contend that "there is a question of fact with regard to BAC's handling" of their claim for coverage. *Id.* at 16.

Defendants, however, fail to offer a "scintilla of evidence in support" of their charge that BAC breached the implied covenant of good faith and fair dealing.[3] *Anderson*, 477 U.S. at 252. Defendants' entire argument seems to boil down to the false contention that BAC "had a duty," from "when it first received notice of the claim," to task different employees with investigating Defendants' claim for coverage, on the one hand, and dealing with their defense in the Legal Malpractice Action, on the other hand. Opp. to MSJ at 13–14. In their brief, Defendants seize upon the representation by BAC that when it filed this action for declaratory judgment, "BAC 'split' its file and assigned the defense of Defendants in the Legal Malpractice Action to a separate

---

[3] As BAC points out, Defendants do not assert a counterclaim for breach of the covenant of good faith and fair dealing, nor did Defendants propose to amend their Answer to include such a counterclaim. MSJ Reply at 6n.3. The Court nevertheless addresses Defendants' argument about the implied covenant, since Defendants apparently seek to raise a broader affirmative defense of unclean hands, as discussed below.

claim adjuster so that issues pertaining to the underlying defense would be handled separately from the coverage issues in dispute in the DJ Action going forward." MSJ at 20; *see* Opp. to MSJ at 13–16. Defendants contend that BAC was required to take this precaution as soon as the Legal Malpractice Action was filed, since BAC had notice of a potential coverage dispute as soon as it received the Weininger Letter. *See* Opp. to MSJ at 14.

Defendants, however, cite no authority for proposition that an insurer is required to create an internal wall between its coverage investigation and the underlying liability defense *at the first sign* that the insurer might ultimately disclaim coverage. The Court is not aware of any authority for that proposition under New York law.[4] Rather, Defendant's position incorrectly implies that an insurer has a conflict of interest any time it undertakes to defend its insured, even though the insurer is not persuaded that the claims are actually covered. That is not the law, nor could it be given the breadth of the duty to defend under New York law.

Indeed, it is well-established in New York "that issuance of a reservation of rights allows the insurer the flexibility of fulfilling its obligation to provide its insured with a defense, while continuing to investigate the [coverage] claim further." *L. Offs. of Zachary R. Greenhill P.C. v. Liberty Ins. Underwriters, Inc.*, 128 A.D.3d 556, 559, 9 N.Y.S.3d 264, 267 (1st Dep't 2015); *see id.*, (rejecting the argument that insurer "breached . . . by agreeing to defend [the insured] subject to a full reservation of rights"). None of the relevant cases hold, or comment in dicta, that the

---

[4] Some commentators have noted an absence of "case law governing whether and when to split the file." Anthony J. Piazza et al., Ethical Obligations Surrounding Coverage Claim and Litigation, § C ("Splitting the Claims Handling"), *available at*, https://nysba.org/NYSBA/Coursebooks/Spring%202016%20CLE%20Coursebooks/Insurance%20Coverage%20201 6/13-Piazza-Vahey-Santiago-Stockwell-ETHICAL%20OBLIGATIONS%20SURROUNDING%20COVERAGE.pdf; *see* Splitting Claim Files, 1 Practical Tools for Handling Insurance Cases § 7:19 ("There is a dearth of case law addressing the issue of conflict screens in the insurance context."). Phrased another way, there are no cases holding that New York law requires an insurer to split its file. The Court notes that the Ninth Circuit has squarely rejected the argument that California requires the "separation of files." *Emps. Ins. of Wausau v. Albert D. Seeno Const. Co.*, 945 F.2d 284, 286 (9th Cir. 1991).

insurer is required to split its file (*i.e.*, implement a conflict screen) when it issues a reservation of rights. Moreover, the New York Court of Appeals has made clear that an insurer does *not* have a conflict of interest "in every case" where it defends the insured subject to a reservation of rights. *Pub. Serv. Mut. Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 401 n*, 425 N.E.2d 810, 815 n* (1981); *see Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 23 (S.D.N.Y. 2022); *Great American Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 373 (S.D.N.Y. 2020); *Exec. Risk Indem. Inc. v. Icon Title Agency, LLC*, 739 F. Supp. 2d 446, 450 (S.D.N.Y. 2010); Ostrager & Newman § 2.03[a][2] ("Courts have held that a reservation of rights does not automatically create a conflict of interest between the insurer and the insured.").

Defendants further assert that BAC acted improperly by failing to advise Defendants of their right to select "independent counsel at BAC's expense." Opp. to MSJ at 20; *see id.* 18–20; *see also* Fisher Aff. ¶12. Defendants also stress that the defense counsel selected by BAC has not filed a motion to dismiss the Legal Malpractice Action on the ground that it was untimely filed, even though Defendants believe such a motion might prevail. *See* Opp. to MSJ at 16–18; Fisher Aff. ¶ 11. Defendants fail to raise any material dispute on these grounds. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

"Again, [Defendants] cite[] no caselaw suggesting that [BAC's] failure to advise [them] of any right to independent counsel precludes [BAC] from now disclaiming coverage." *Peleus Ins. Co.*, 587 F. Supp. 3d at 23. To be sure, "where there is a conflict of interests between an insurance company and its insured, the insured has the right to independent counsel." *69th St. & 2nd Ave. Garage Assocs., L.P. v. Ticor Title Guarantee Co.*, 207 A.D.2d 225, 227, 622 N.Y.S.2d 13, 14 (1st Dep't 1995). However, as indicated above, Defendants offer no evidence of a conflict of interest beyond the litigation position of BAC in this action that the Policy does not provide coverage for

the Legal Malpractice Action (which Defendants concede is true).

An "insured's right to independent counsel is only triggered when the reservation of rights creates a potential conflict of interest for the counsel provided by the insurer." *Houlihan Lawrence, Inc.*, 449 F. Supp. 3d at 373 (quoting *Exec. Risk Indem. Inc.*, 739 F. Supp. 2d at 450); *see Peleus Ins. Co.*, 587 F. Supp. 3d at 23; Ostrager & Newman § 2.03[a][2]; *but see Federated Dep't Stores, Inc.*, 28 A.D.3d at 37 n.1, 807 N.Y.S.2d at 66 n.1.  The New York Court of Appeals has explained, for example, that "a conflict of interest requiring retention of separate counsel" exists "where the defense attorney's duty to the insured would require that he defeat liability on any ground and his duty to the insurer would require that he defeat liability only upon grounds which would render the insurer liable." *Goldfarb*, 53 N.Y.2d at 401 n*, N.E.2d at 815 n*.  But such a conflict is not present "in every case." *Id.*[5]

Rather, "[i]n practically all . . . cases, the insured and the insurer will have a common interest in defeating the claim made against the insured" as quickly as possible. *69th St. & 2nd Ave. Garage Assocs.*, 207 A.D.2d at 227, 622 N.Y.S.2d at 14.  Defendants offer no evidence, whatsoever, that BAC and Defendants have a conflict that creates "divergent interests" in how to defeat the Legal Malpractice Action.  *Id.*  As such, BAC and Defendants "have a common interest in defeating the claim." *Id.*

Although Defendants contend that "there is a question of fact with regard to BAC's handling" of their claim for coverage, MSJ Opp. at 16, undisputed facts establish that BAC followed a textbook course of action.  "The preferable course for an insurer in cases in which

---

[5] In some jurisdictions, "an insurer may be estopped from disclaiming coverage where it controls the insured's defense, obtains information through this relationship, and then later seeks to deny coverage based on that information." Ostrager & Newman § 2.06[b] (citing non-New York cases).  That is not the situation here, however, since there is no dispute that, by virtue of the Weininger Letter, BAC had all of the information it needed to disclaim coverage based on the Known-Claims Exclusion before the Legal Malpractice Action was even filed (and thus before BAC undertook any defense).  *See infra* at 20–21; BAC File at 21; Def. Counter 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.

coverage is questionable is to defend the insured subject to a reservation of rights and, if appropriate, seek a declaratory judgment determining the obligations of the insurer." Ostrager & Newman § 2.02. Here, the parties agree that BAC had advance notice that Defendants' claim for coverage was questionable. *See* Def. Counter 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35. Nevertheless, the parties agree, BAC agreed to provide a defense subject to a reservation of rights. Pl. 56.1 ¶ 28; Def. Counter 56.1 ¶ 28; *see* BAC Sept. Letter. Moreover, there is no dispute that BAC continues to provide a defense to Defendants in the Legal Malpractice Action, subject to a reservation of rights, pending the resolution of this declaratory judgment action. Pl. 56.1 ¶ 30; Def. Counter 56.1 ¶ 30; Bernstein Aff. ¶ 5. BAC acted properly.

Without directly pressing the argument, let alone citing authority, Defendants gesture at an unclean hands defense throughout their brief. "New York courts have long applied the maxim that one 'who comes to equity must come with clean hands.'" *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Amarant v. D'Antonio*, 197 A.D.2d 432, 434, 602 N.Y.S.2d 837, 838 (1st Dep't 1993)). Thus, the Second Circuit has explained, "[c]ourts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine." *Id.* (quoting *Weiss v. Mayflower Doughnut Corp.*, 1 N.Y.2d 310, 316, 135 N.E.2d 208, 210, 152 N.Y.S.2d 471, 474 (1956)); *see Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) (the doctrine of unclean hands requires proof: (1) of "immoral, unconscionable conduct directly related to the subject matter in litigation"; (2) that "the conduct was relied upon"; and (3) of injury or prejudice).

As an initial matter, it is well settled that a "declaratory judgment is not always a form of equitable relief." *Connecticut Gen. Life Ins. Co. of N.Y. v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993) (internal quotation marks omitted); *see Starr Int'l Co. v. American Int'l Grp., Inc.*, 623 F.

Supp. 2d 497, 502 (S.D.N.Y. 2009). Rather, since the "underlying controversy" here relates to "defendants' contractual claims to benefits under" an insurance policy, "the declaratory judgment plaintiff[] seek[s] is a form of *legal* relief." *Cole*, 821 F. Supp. at 197 (emphasis in original). "Moreover, as a general rule, [equitable] estoppel cannot be used to create coverage where none exists." *Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co.*, 28 A.D.3d 32, 38, 807 N.Y.S.2d 62, 67 (1st Dep't 2006); *see Wausau Ins. Companies v. Feldman*, 213 A.D.2d 179, 180, 623 N.Y.S.2d 242 (1st Dep't 1995) ("Estoppel may not be used to create coverage . . . ."); Ostrager & Newman § 2.06[b] ("No Coverage by Estoppel"). In any event, as explained above, Defendants offer no evidence to raise a genuine question whether BAC engaged in any improper, let alone "unconscionable" conduct. *PenneCom B.V.*, 372 F.3d at 493; *Weiss*, 135 N.E.2d at 210, 1 N.Y.2d at 316, 152 N.Y.S.2d at 474.

Defendants must offer more than "some metaphysical doubt" that BAC acted properly. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Defendants have not done so, and BAC is entitled to summary judgment on its claims for declaratory judgment that it has no duty to defend or indemnify Defendants in the Legal Malpractice Action.

### B. There Is No Genuine Dispute that the Known-Claims Exclusion Bars Coverage.

As explained above, Defendants concede that the Policy does not provide coverage because the Legal Malpractice Action arises out of legal services prior to the Policy's Retroactive Date. *See* Opp. to MSJ at 11. BAC is entitled to summary judgment on its claims on that basis alone. There is also no genuine dispute that the Known-Claims Exclusion bars coverage.

The parties agree that the Policy contains a Known-Claims Exclusion, which excludes from coverage any claim against Defendants arising from legal services "rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen" that such prior legal services "could give rise" to a claim. Policy § I.2.a; *see* Pl. 56.1 ¶ 26; Def. Counter 56.1 ¶ 26. The

language of the Known-Claims Exclusion is not ambiguous, and Defendants do not contend that there is any ambiguity. *See Westport Ins. Corp. v. Goldberger & Dubin, P.C.*, 255 F. App'x 593, 594 (2d Cir. 2007). The parties also agree that, prior to the effective date of the Policy, Defendants received the Weininger Letter, which informed Defendants that their former client had retained new counsel "to investigate a legal malpractice claim arising out of [Defendants' prior] handling of [the client's] medical malpractice case." Weininger Letter; Pl. 56.1 ¶ 9; Def. Counter 56.1 ¶ 9. As such, "no reasonable juror could find" that Defendants could *not* have reasonably foreseen that their handling of the medical malpractice case could give rise to a claim against them. *Goldberger & Dubin, P.C.*, 255 F. App'x at 594–95.[6]

Under New York law, an "insurer is relieved of its obligation to defend" if "the insurer can show" that the action against its insured falls "entirely within [a] policy exclusion[.]" *Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988) (internal quotation marks and citation omitted); *accord Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325, 320 N.E.2d 619, 621 (1974). BAC has shown that the Legal Malpractice Action falls entirely within the Known-Claims Exclusion. As such, BAC has no duty to provide a defense in the Legal Malpractice Action. *See Int'l Paper Co.*, 35 N.Y.2d at 325, 320 N.E.2d at 621. In addition, because the duty to defend is broader than the duty to indemnify, it follows that BAC has no duty to indemnify Defendants. *See EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir. 1990). Accordingly, BAC is entitled to summary judgment on its claims for declaratory judgment that BAC has no duty to defend or indemnify Defendants in the Legal Malpractice Action.

---

[6] The Court notes the irony that, in pressing their argument for equitable estoppel, Defendants insist that BAC had notice that there would be a coverage dispute as soon as BAC received the Weininger Letter, *see* Opp. to MSJ at 14, yet Defendants maintain the pretense that there is a dispute of fact whether Defendants could have reasonably foreseen the legal malpractice claim, *see* Opp. to MSJ at 12–13.

### C.  BAC Is Entitled to Summary Judgment Dismissing Defendants' Counterclaims.

Defendants assert four counterclaims.  First, they assert a counterclaim for a declaratory judgment that BAC is required to defend and indemnify Defendants in the Legal Malpractice Action.  Ans. ¶ 13.  BAC is entitled to summary judgment dismissing that counterclaim for the same reasons it is entitled to summary judgment on its claims for declaratory judgment that BAC has no duty to defend or indemnify Defendants in the Legal Malpractice Action.

Second, Defendants assert a counterclaim for attorneys' fees.  Ans. ¶ 15.  They allege that they "are entitled to have their attorneys' fees paid by plaintiff with respect to the cost of defending this action, particularly in view of the bad faith and improper conduct engaged in by the plaintiff." *Id*.  "Under the bedrock principle known as the 'American Rule,' each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (cleaned up).  In *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 389 N.E.2d 1080 (1979), the New York Court of Appeals established an exception whereby "an insured who is 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations,' ***and who prevails on the merits***, may recover attorneys' fees incurred in defending against the insurer's action," *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 597, 822 N.E.2d 777, 780 (2004) (emphasis added) (quoting *Mighty Midgets*, 47 N.Y.2d at 21).  Defendants are not entitled to recover attorneys' fees under *Mighty Midgets* because Defendants have not prevailed on the merits of the insurance coverage dispute with BAC.  *See City Club Hotel, LLC*, 3 N.Y.3d at 598, 822 N.E.2d at 780; Ostrager & Newman § 5.06[b].  Moreover, there is no cognizable, free-standing claim for attorneys' fees based on general bad faith and improper conduct by an insurer, and, as explained above, Defendants have not offered evidence of bad faith or improper conduct by BAC.  As such, BAC is entitled to

summary judgment dismissing Defendants' counterclaim for attorneys' fees.

Third, Defendants assert a counterclaim for "intentional infliction of emotional harm upon defendant, John H. Fisher." Ans. ¶ 17.  In New York, a claim for intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the outrageous conduct and injury; and (iv) severe emotional distress."  *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  Intentional infliction of emotional distress is "a highly disfavored tort under New York law."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (internal quotation marks and brackets omitted).  Specifically, it is exceedingly rare to satisfy the first element.  *See Howell*, 81 N.Y.2d at 122, 612 N.E.2d at 702 ("Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."); *see Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86, 90 (1983).  Conduct may be considered "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy*, 58 N.Y.2d at 303 (citation omitted).

Defendants do not offer a scintilla of evidence for this claim.  *See Anderson*, 477 U.S. at 252.  In the two paragraphs Defendants devote to opposing summary judgment on this claim, Defendants reprise the unsupported contention that BAC acted improperly by failing to assign a separate claims adjuster to its liability defense as soon as the Legal Malpractice Action was filed.  *See* Opp. to MSJ at 22.  There is no authority for the proposition that BAC acted improperly, let alone engaged in conduct "so outrageous" and "extreme" as to be "utterly intolerable in a civilized community."  *Murphy*, 58 N.Y.2d at 303.  As such, BAC is clearly entitled to summary judgment

dismissing Defendants' counterclaim for intentional infliction of emotional distress.

Defendants' third counterclaim also mentions the unrelated doctrine of laches. *See* Ans. ¶ 17. The Answer alleges: "Prior to this action, plaintiff provided legal representation and coverage to the defendants, and plaintiff's attempt to disclaim and deny coverage is . . . untimely and barred by laches." *Id.* Under New York law, where an insurer provides a defense without reserving its right to later disclaim coverage, it may be "equitably estopped from doing so." *L. Offs. of Zachary R. Greenhill P.C.*, 128 A.D.3d at 560, 9 N.Y.S.3d at 267; *see Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002) ("Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay."). Here, however, there is no dispute that, shortly after the Legal Malpractice Action was filed, BAC agreed to provide a defense subject to a reservation of rights. *See* Pl. 56.1 ¶ 28; Def. Counter 56.1 ¶ 28; BAC Sept. Letter. This timely reservation of rights "preclude[s]" Defendants' claim of laches or "equitable estoppel." *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 176 (2d Cir. 2006); *see also O'Dowd v. American Sur. Co. of N.Y.*, 3 N.Y.2d 347, 355, 144 N.E.2d 359, 363 (1957); *U.S. Underwriters Ins. Co. v. Allstate Ins. Co.*, 2013 WL 3148636, at *9 (E.D.N.Y. June 19, 2013) (collecting cases). As such, BAC is entitled to summary judgment dismissing any counterclaim on that basis.

Finally, Defendants purport to assert a counterclaim for punitive damages. Ans. ¶ 19. Specifically, Defendants allege: "As a result of the malicious and intentional acts of the plaintiff in improperly and without basis seeking to avoid coverage on behalf of the defendants in this matter, the plaintiff should be accountable to the defendants for punitive damages." *Id.* There is no cognizable, freestanding claim for punitive damages, a remedy which is "generally not available for breach of contract." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 222 (2022)

(quoting *Barnes v. Gorman*, 536 U.S. 181, 182 (2002)).    Moreover, as explained above, Defendants conceded that the "Policy precludes coverage" for the Legal Malpractice Action.  Opp. to MSJ at 11.  As such, Defendants cannot maintain that BAC has no "basis [for] seeking to avoid coverage."  Ans. ¶ 19.  BAC is entitled to summary judgment dismissing Defendants' purported counterclaim for punitive damages.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to amend is DENIED, and Plaintiff's motion for summary judgment is GRANTED.  The Clerk of Court respectfully is requested to terminate all open motions, to enter judgment in favor of Plaintiff Berkley Assurance Company, and to close this case.

**SO ORDERED.**

**Date:  March 20, 2025**
    **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**